**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STANISLAUS FOOD PRODUCTS COMPANY, | Case No. 1: 09-cv-00560-LJO-BAM |
| | **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| Plaintiff, | |
| vs. | |
| USS-POSCO INDUSTRIES, et al., | |
| Defendant. | |
| _____/ | |

Currently before the Court is Plaintiff's Motion for Reconsideration of the Court's October 25, 2012 Order denying Plaintiff's Motion to De-Designate Discovery Materials. (Doc. 452.) Defendants Pitcal, Inc. and U. S. Steel Corporation filed their opposition on November 16, 2012. (Doc. 454.) Non-parties Silgan Containers Corporation and Ball Packaging Corporation also opposed Plaintiff's Motion. (Doc. 457, 459.) Having considered the parties' briefs, as well as the Court's file, the Court issues the following order.

## I.   FACTUAL BACKGROUND

Plaintiff Stanislaus Food Products is a tomato canner which purchases certain types of tin cans to can its products. Since 2001, Stanislaus has purchased millions of one-gallon tin-plated cans from non-party Silgan Containers Corporation ("Silgan"). Silgan buys "Tin Mill Products" (tin-plated steel) and manufactures the Tin Mill Products into tin-plated cans which are sold to canners, such as Stanislaus.

1

Defendant USS-POSCO Industries ("UPI") is a manufacturer of Tin Mill Products.  UPI's Tin Mill Products are made from "hot band" steel, which is purchased from U.S. Steel.  UPI then sells its Tin Mill Products to Silgan to make tin cans which Silgan in turn sells to Stanislaus.

This action alleges antitrust conspiracies by defendants to allocate the Tin Mill Products market to UPI so as to increase the prices of Tin Mill Products.

**A.    Plaintiff's Motion for De-Designation of Discovery Materials**

On October 17, 2012, Plaintiff moved to de-designate discovery materials produced subject to an "attorney's eyes only" designation.  (Doc. 439.)  Specifically, Plaintiff challenged Defendants' designations of the following categories of documents: (1) U.S. Steel's and UPI's historical transactional data; (2) Eight-year old communications concerning Tin Mill product pricing strategies; (3) UPI management committee minutes; (4) Three-year old communications regarding historical information; (5) U.S. Steel's reports on the tin mill product market; (6) Communications regarding U.S. Steel's Tin Mill product pricing; and (7) Communications regarding U.S. Steel's and UPI's respective negotiations with Silgan.

Plaintiff argued its executives needed to review the information "so they may evaluate this case and the prospects for settlement."  Plaintiff also argued that the information would not risk competitive harm to Defendants or non-parties because the information was "stale" and because Plaintiff did not directly compete with any of these entities.

Defendants and non-parties opposed Plaintiff's request, noting the information was highly confidential and competitively sensitive.  Additionally, Defendants and non-parties argued that if Plaintiff's executives were apprised of this information, Plaintiff would gain significant negotiating leverage in future endeavors which in turn, would seriously harm Defendants' relationships with its customers, such as the objecting non-parties.

**B.    The Court's Order Denying Plaintiff's Motion For De-Designation**

On October 25, 2012, the Court heard extensive oral arguments on Plaintiff's Motion to De-Designate.  (Doc. 446.)  The Court issued its decision on the record, and denied Plaintiff's Motion. (Doc. 447.) The Court explained that:

2

each of the categories contains confidential information. And at a minimum confidential information, some of that includes trade secret pricing information and pricing strategy, trade secret quantity information and customer information, business strategies, sales information, and so forth.  And that disclosure would cause irreparable competitive injury here.

(Mot. Tr., 4: 23-25; 5: 1-4, Oct. 25, 2012, Doc. 448.)

In a minute order dated October 25, 2012, the Court further explained the basis for its decision:

> Defendants bore the initial burden of demonstrating good cause to maintain the confidentiality designations. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). Here, there is good cause to continue protection of the disputed materials. These discovery documents detail Defendants' business and pricing strategies, how Defendants intend to compete in the tin mill market, in addition to providing sensitive information concerning the cost inputs of Plaintiff's supplier and other similar third parties. This trade secret and other confidential information would provide Plaintiff with significant negotiating leverage against current and potential suppliers, as well as place strain on the relationships between Defendants and their third party customers. This information is not stale, because even to the extent it does not provide direct insight into current business strategies, the information can be extrapolated to predict future strategies and practices, and is still relevant today. *See In re Adobe Sys, Inc. Sec. Litig.*, 141 F.R.D. 155, 163 (N.D. Cal. 1992). Once good cause is shown, the burden shifts back to Plaintiff to demonstrate non-disclosure would prejudice Plaintiff's ability to litigate the case, and that this prejudice outweighs the risk of disclosure to competitors. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992). Here, the risk of disclosure to competitors is absolute because Plaintiff's executives are involved in competitive decision making. *Id.* at 1472. On the other hand, because Plaintiff's counsel and experts have access to all the subject information, Plaintiff has failed to demonstrate that non-disclosure would prejudice Plaintiff's ability to litigate the case. *See Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (The party seeking access must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel.... Requiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.')  Accordingly, as stated more fully on the record, the Court DENIES Plaintiff's Motion to De-Designate Discovery Documents.

(Doc. 447.)

## III.   DISCUSSION

**A.   Legal Standard**

Reconsideration is appropriate if the court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993), *cert. denied*, 512 U.S. 1236 (1994); *See also, Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration should not be granted, absent

highly unusual circumstances, unless the ... court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law") (internal quotations marks and citations omitted). Reconsideration is not a mechanism for the parties "to ask the court to rethink what the court has already thought through—rightly or wrongly." *United States v. Rezzonico,* 32 F.Supp.2d 1112, 1116 (D. Ariz.1998).

Plaintiff argues the Court should reconsider its October 25, 2012 Order because the Court committed the following clear errors of law: (1) the Court did not, on a document-by-document basis, conduct the required "substantial risk of serious harm" and "good cause" analysis; (2) the Court found that U.S. Steel, UPI and U.S. Steel's and UPI's customers would suffer competitive harm, even though Stanislaus does not compete with these entities; and (3) the Court denied Plaintiff's executives access to the subject documents that are key to Plaintiff's case.

Defendants respond that the documents sought to be de-designated contain "confidential marketing, commercial sales and production strategies, as well as market drivers for the tin mill products and container industries, projected profitability of tin mill products, and its strategies about pricing and contract terms."  (Def.'s Op. To Reconsideration, 3: 8-14, Doc. 454.)  Defendants also argue that "[b]ecause Plaintiff is an indirect purchaser of tin mill products, and it is involved, on an on-going basis, in discussions and negotiations with U.S. Steel's and UPI's direct purchaser customers - tin can manufacturers - the disclosure of this information to Plaintiff's employees creates a substantial risk of serious harm to Defendants' business relationships with its customers." *Id.* at 8: 14-17.  Non-parties Silgan Containers and Ball Packaging Corporation[1] echoed these concerns. (*See generally,* Doc. 457, 459.)

**B.     The Court Did Not Commit Clear Error**

"Clear error presupposes a manifest failure to consider material facts presented to the court before the decision." *Yeager v. AT&T Mobility, LLC,* 2011 WL 3847178 (E.D. Cal. 2011).  "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the arguments considered by the court before rendering its original decision fails to

---

[1] Ball Packaging Corporation is a customer of UPI and U.S. Steel.  Ball competes with manufacturers such as Silgan (Plaintiff's tin can supplier).

carry the moving party's burden." *United States v. Westlands Water Dist.,* 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) (internal citations omitted).  "To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."[2] *Westlands Water,* 134 F.Supp.2d at 1131.

The Court did not commit clear error.  First, case law does not require and the parties' Protective Order does not ask the Court to set forth a "document-by-document" analysis as part of its Order.  Indeed, all parties presented their arguments by the category of documents, and Plaintiff did not present their arguments on a document-by-document basis.  Rather, Plaintiff generally discussed the categories of documents it sought to de-designate.  Moreover, Plaintiff offered the same two arguments for each category; namely, that disclosure would not risk substantial harm to Defendants because the information was "stale," and Plaintiff was not directly competing with Defendants.

After reviewing all the relevant disclosure requests, the Court, both at oral argument and in its Minute Order, explained the factors it considered in its good cause examination.  At oral argument, the Court rejected Plaintiff's position that there was no good cause to continue the documents' protection by explaining the relevant factors to be considered:

> I disagree with [Plaintiff's argument that there is no good cause]. I mean, I've looked at the information that has been provided. I think [Defendants] have met their burden. I think that the information related to pricing and the strategies and how they came up with that information, the customers that are involved, when and where each sale was made for a specific period of time, is confidential information. So I disagree with that. I think they have met their burden.

(Mot. Tr., 23: 2-9, Oct. 25, 2012, Doc. 448.)  In the Court's Minute Order, the Court elaborated that

> [t]hese discovery documents detail Defendants' business and pricing strategies, how Defendants intend to compete in the tin mill market, in addition to providing sensitive information concerning the cost inputs of Plaintiff's supplier and other similar third parties. This trade secret and other confidential information would provide Plaintiff with significant negotiating leverage against current and potential suppliers, as well as place strain on the relationships between Defendants and their third party customers.

(Doc. 447.)

---

[2] As the Ninth Circuit has explained the clear error standard, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Fisher v. Roe,* 263 F.3d 906, 912 (9th Cir. 2001) (citation omitted), overruled on other grounds by *Payton v. Woodford,* 346 F.3d 1204 (9th Cir. 2002).

1      The Court identified and discussed the factors it considered to be "good cause." *See, Phillips*

2  *v. GMC,* 307 F.3d 1206, 1210-11 (9th Cir. 2002).  The record shows the Court found the sensitive

3  commercial value of the information, the legitimate privacy concerns of non-parties, and the unfair

4  business advantage Plaintiff would acquire as both a direct consumer of tin cans, as well as an

5  indirect purchaser of tin mill products, constituted sufficient good cause for each category of

6  documents.

7      Plaintiff's disagreement with the Court's conclusions does not meet the clear error standard.

8  *United States v. Westlands Water Dist.,* 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) (mere

9  disagreement with court is insufficient for reconsideration); *Yeager v. AT&T Mobility, LLC,* 2011

10  WL 3847178 (E.D. Cal. 2011) ("The fact that defendant can make reasonable, and potentially

11  meritorious, arguments to the contrary does not transform the decision into clear error").  The Court

12  properly found good cause to continue the "attorney eyes only" designation.  The Court's ruling on

13  the record, in addition to the Court's minute order, identified and discussed the factors it considered

14  to be good cause.  Accordingly, there was no error in the Court's analysis.

15      Once determining there was good cause to continue protection, it was Plaintiff's burden to

16  demonstrate that the risk of disclosure to competitors was outweighed by the impairment to

17  Plaintiff's ability to litigate their case.  *Nutratech, Inc. v. Suntech (SSPF) Intern., Inc.,* 242 F.R.D.

18  552 (C.D. Cal. 2007); *Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1470 (9th Cir.1992).

19  At this point, "[t]he burden then shifts to the party seeking discovery to show that the information is

20  relevant to a party's claims or defenses or the subject matter of the lawsuit and is necessary to

21  prepare the case for trial."  *Nutratech, Inc. v. Syntech (SSPF) Int'l. Inc.,* 242 F.R.D. 552, 555 (C.D.

22  Cal. 2007).  The Court determined that Plaintiff had failed to meet this burden.

23      Plaintiff argues this finding was clearly erroneous for two reasons.  First, Plaintiff argues that

24  because they do not actually "compete" with the Defendants or non-parties, the disclosures are not

25  being made to "competitors."  The Court, however, already considered and rejected this argument:

26      I do not find that plaintiff's argument that it is not a competitor of U.S. Steel or UPI to
       be persuasive. . . . [while] plaintiff may not be a direct competitor of defendants here,
27     but disclosure of the pricing and quantity strategies would give plaintiff a significant
       negotiating leverage as a customer of U.S. Steel's and UPI's customer – that is,
28     Silgan.  I believe Mr. Butler is savvy enough to be able to use the information for

1    business purposes, and there is some evidence that he has already attempted to gain
     the information that has been confidential.

2

3    (Mot. Tr., 448 6: 16-25, 7: 1, Oct. 25, 2012, Doc. 448.)  In other words, the Court determined that

4    substantial risk of serious harm could come from sources other than direct competitors.  Such harm

5    could also come from entities having adverse interests to the disclosing party.  As disclosure of

6    information concerning negotiations, price and business strategies could harm Defendants'

7    relationship with non-parties, there was a substantial risk of serious harm.

8         Second, Plaintiff argues their ability to litigate the case would be severely impaired if they

9    could not provide this information to their executives.  Where a party challenges an attorney's eyes

10   only designation, that party must show the protective order "actually prejudice[s] presentation of

11   [that] party's case, not merely increase the difficulty of managing the litigation."  *Intel Corp. v. VIA*

12   *Technologies, Inc.,* 198 F.R.D. 525, 528 (N.D. Cal. 2000) ("Though Ms. Fu herself may need the

13   information to advise Intel and manage the case, she does not allege that Intel's ability to litigate

14   through outside counsel will be impaired"); *Carpenter Tech. v. ARMCO, Inc.*, 132 F.R.D. 24, 28

15   (E.D. Pa. 1990) ("the party seeking access must demonstrate that its ability to litigate will be

16   prejudiced, not merely its ability to manage outside litigation counsel); *Hirsh Inc. v. United States*,

17   657 F.Supp. 1297, 1305 (C.I.T. 1987) ("in view of retained counsel's competence, it is not clear how

18   plaintiff's position will be prejudiced by excluding [in-house] counsel from access").  Requiring a

19   party to rely on its competent outside counsel does not create an "undue and unnecessary burden."

20   *Intel Corp.,* 198 F.R.D. at 529.

21        Plaintiff's attorney and experts have access to this confidential information.  Plaintiff does

22   not offer an adequate reason why its executives would need this information to litigate the case.  In

23   their moving papers, Plaintiff claimed its executives needed this information to evaluate potential

24   settlement.  At oral argument, the Court explained that directing settlement negotiations was

25   insufficient to lift the highly confidential designation.

26        Plaintiff later claimed its executives need this information to "guide the case . . . through

27   motions and trial."  However, Plaintiff does not offer a specific reason as to why it could not litigate

28   the case if its executives did not have access to the information.  On the contrary, because Plaintiff's

attorneys and experts have full access to the information, there is no indication Plaintiff's ability to litigate this case would be prejudiced.  Absent such prejudice, requiring Plaintiff to rely on its competent counsel does not create an undue and unnecessary burden.

Lastly, Plaintiff argues the Court failed to "consider whether redacting portions of the discovery material will nevertheless allow disclosure."  However, redaction would only be appropriate where sensitive information could be protected "while leaving other meaningful information."  *In re Roman Catholic Archbiship,* 661 F.3d 417, 425 (9th Cir. 2011).  Here, the information Plaintiff seeks is *the* sensitive information requiring protection.  Thus, redaction would not be appropriate.  Accordingly, the Court does not find clear error in denying Plaintiff's Motion to de-designate confidential discovery materials.

### III.   CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion for Reconsideration.

IT IS SO ORDERED.

Dated:    **December 11, 2012**            **/s/ Barbara A. McAuliffe**
                                           UNITED STATES MAGISTRATE JUDGE

8