IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANISLAUS FOOD PRODUCTS COMPANY,<br><br>    Plaintiff,<br><br>    vs.<br><br>USS-POSCO INDUSTRIES, et al.,<br><br>    Defendants. | Case No. 1:09-cv-00560-LJO-BAM<br><br>ORDER REQUESTING FURTHER BRIEFING<br><br>ORDER VACATING THE HEARING SCHEDULED FOR JANUARY 22, 2013 |

Currently pending before the Court is the motion for summary judgment filed on December 13, 2012, by Defendants USS-POSCO Industries ("UPI"), POSCO America Steel Corporation ("POSCO America"), POSCO-California Corporation ("POSCAL"), Pitcal, Inc. ("Pitcal"), and United States Steel Corporation ("U.S. Steel") (collectively "Defendants"). Plaintiff Stanislaus Food Products Company ("Plaintiff") has filed an opposition to the motion, and Defendants have filed a reply.

After reviewing the parties' submissions, it has become clear to the Court that the parties have sharply different views on what this case is about. Defendants are proceeding in this action under the impression that Plaintiff's antitrust claim under § 1 of the Sherman Act is predicated on an agreement between UPI, U.S. Steel, and POSCO to allocate *fully* the market for "tin mill products" in the western United States to UPI.[1] Specifically, Defendants view the alleged agreement as entailing the following: (1) POSCO agreed that it would not enter the market for tin mill products in the western United States;

---

[1] Plaintiff also asserts two state law claims: (1) violation of California's Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*; and (2) unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* However, these claims are viable only so long as Plaintiff's § 1 claim remains viable.

1

(2) in exchange, U.S. Steel agreed to exit the market for tin mill products in the western United States *completely* by (a) eliminating certain discounts for quarter-inch width surplus, (b) eliminating freight equalization pricing, and (c) not otherwise pricing its tin mill products competitively against UPI in the western United States; and (3) UPI agreed to utilize its newly acquired monopoly power in the western United States to raise its prices substantially and to secure record profits.[2]

Consistent with this view, Defendants now seek summary judgment on the ground that there is no evidence that POSCO or U.S. Steel "exited" the market for tin mill products in the western United States. As support for their argument, Defendants provide evidence that U.S. Steel continued to sell tin mill products in the western United States at all times relevant to this case pursuant to national supply contracts. Defendants maintain that this refutes any allegation that U.S. Steel reached an agreement to *fully* abandon the market to UPI.

In response, Plaintiff appears to cast its § 1 claim in a different light. In its opposition papers, Plaintiff de-emphasizes its allegations that U.S. Steel *fully* exited the relevant market and allocated it to UPI. Plaintiff focuses instead on its allegations that U.S. Steel agreed to not otherwise price its tin mill products competitively against UPI in the western United States.

The problem with Plaintiff's position is that it appears to be inconsistent with the overarching thrust of the third amended complaint ("TAC"), the operative pleading in this action. The theory of liability espoused in the TAC appears to be the one identified by Defendants: UPI, POSCO, and U.S. Steel agreed to allocate *fully* the market for tin mill products in the western United States to UPI so that UPI could use its monopoly power to raise prices and secure record profits. The following allegations asserted in the TAC make this clear:

> 13. Pursuant to the Market Allocation Agreement, U.S. Steel agreed with POSCO and with UPI to exit the Relevant Market by ending competitive pricing against UPI, including, but not limited to, U.S. Steel's decades-long practice of offering "quarter-inch width surplus" and "freight equalization" pricing. POSCO agreed to stay out of the Relevant Market regardless of how high the prices of Tin Mill Products would become. The purpose and effect of this agreement was to *eliminate* competition, leaving UPI as the *sole monopolist supplier* of Tin Mill Products to customers in the Western United States, and as a result, control prices.
>
> 54. U.S. Steel's direct competition with UPI was in U.S. Steel's economic self-interest

---

[2] The agreement allegedly made economic sense to U.S. Steel and POSCO because each owned a 50% interest in UPI through their holding companies, and therefore both would benefit from UPI's record profits.

2

because U.S. Steel received 100% of the profits from its own sales, whereas it received only 50% of the profits of UPI's sales. Exiting the market therefore would only make economic sense if POSCO agreed to allocate the *entire* Relevant Market to UPI, permitting UPI to control and substantially increase the prices of Tin Mill Products in the Relevant Market, to a level far higher than would result from lawful competition. Thus, U.S. Steel's exit was neither independent nor unilateral.

73. The Market Allocation Agreement contained specific terms and roles for each participant. The overarching purpose of the Agreement was to allocate the Relevant Market *fully* to UPI in order to create a *monopoly* and control price so that UPI (under the direction and control of U.S. Steel, through Pitcal, and POSCO, through POSAM and POSCAL) could control and increase the prices of Tin Mill Products in the Western United States to artificially high levels.

(Doc. 267, TAC, ¶¶ 13, 54, 73) (emphasis added).

This, however, is not the end of the matter. Even *assuming* that Plaintiff has shifted its theory of liability, it is not necessarily barred from doing so, as Defendants claim. In these circumstances, the Ninth Circuit has explained:

> The complaint . . . does not [necessarily] control the issues properly before [the] court. We have previously held that, when issues are raised in opposition to a motion [for] summary judgment that are outside the scope of the complaint, the district court should have construed [the matter raised] as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time.

Apache Survival Coalition v. United States, 21 F.3d 895, 910 (9th Cir. 1994) (internal quotation marks and citations omitted). See also In re Stratosphere Corp. Sec. Litig., 66 F. Supp. 2d 1182, 1201 (D. Nev. 1999) ("When new issues or evidence supporting a legal theory outside the scope of the complaint is introduced in opposition to summary judgment, a district court should construe the matter as a request to amend pleadings under Federal Rule of Civil Procedure 15(b)."). Thus, whether Plaintiff may recast its allegations at this stage, assuming that they have indeed been recast, depends on the normal factors that the Court must consider in deciding a motion to amend: (1) undue delay; (2) bad faith; (3) prior amendments; (4) prejudice to the opposing party; and (5) futility. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

The parties shall provide further briefing on these matters. From the Court's perspective, the critical issues are: (1) whether Plaintiff's theory of liability has in fact changed entirely, and (2) even if it did, whether there is any prejudice to Defendants.[3] See, e.g., Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-93 (9th Cir. 2000) (plaintiffs could not proceed with claim asserted for the first time

---

[3] This of course does not preclude the parties from discussing any other relevant factors.

3

during summary judgment because defendant would be prejudiced by the lack of discovery). As one district court framed the issue:

> [Cases] distinguish between raising an entirely new claim and refining an existing theory. [Hang On, Inc. v. City of Arlington, 65 F.3d 1248, 1255 (5th Cir.1995)]. Additionally, even where plaintiffs shift gears and set forth an entirely new theory in opposition to summary judgment, some prejudice to defendant must be shown for this court to reject a new theory. "As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense on the merits.'" See Evans v. McDonalds Corp., 936 F.2d 1087, 1088 (10th Cir.1991) (citing Charles Wright & Arthur Miller, Federal Practice & Procedure § 1219 at 194 (1990)).

Lively v. Wash. Inventory Serv., CIVIL NO. 02-1363-MO, 2004 U.S. Dist. LEXIS 30556, at *6-7 (D. Or. Dec. 31, 2004).

Accordingly, the Court ORDERS as follows:

1. By no later than **January 23, 2013**, Plaintiff shall file and serve further briefing on the issues identified above. Plaintiff's briefing shall not exceed six pages.

2. By no later than **January 25, 2013**, Defendants shall file and serve their briefing on the issues identified above. Defendants' briefing shall not exceed six pages.

3. The hearing scheduled on January 22, 2013, regarding Defendants' motion for summary judgment is VACATED. Unless the Court later orders otherwise, Defendants' motion for summary judgment will be decided on the papers. See Local Rule 230(g).

IT IS SO ORDERED.

Dated:   **January 18, 2013**          /s/  **Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE